## MINNIE WALLIS v. STATE.

No. A-7203.   Opinion Filed Nov. 8, 1930.
(292 Pac. 1056.)

Morris & Tant, Bryan Mitchell, and Darnell & La-Rue, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Washita county of the robbery of the Bessie State Bank with firearms, and her punishment fixed by the jury at imprisonment in the state penitentiary for five years.

The evidence of the state was that the State Bank of Bessie in Washita county, was robbed in the daytime with force of arms, on or about the 24th day of January, 1928, and that the actual robbery of the bank was committed by Frank Simpson and Fletcher Rickard.   The evidence upon which the state relied to convict this defendant was circumstantial, and was to the effect that Simpson and Rickard had lived in the home of defendant's husband for several weeks prior to the robbery; that on the day before the robbery Simpson and Rickard borrowed a Jewett car belonging to the defendant's husband, together with some quilts, and took, without the consent of defendant's husband, a tarpaulin and a revolver, for a trip to Pampa, Tex., to get the wife of Rickard; that instead of going to Pampa, Tex., they went that night to the home of John Sims, a relative, and on the next day, with Eldred Morrison driving the car, they went into the town of Bessie

and robbed the bank; that the cashier of the bank, Ben Kiehn, was killed during the robbery and Fletcher Rickard wounded, from which wounds he died on the same day; that Simpson made his ecsape in the Jewett car of defendant's husband, and went back the night following the robbery to the home of John Sims, and was there taken in John Sims' car to a point about 10 miles east of Oklahoma City, near defendant's home, where he was let out of the car; that on that night he appeared at the home of defendant's husband; that when he came in the house, defendant threw her arms around his neck and kissed him; that defendant and Simpson went into a bedroom and spent some 30 minutes talking; that when they came out of the bedroom defendant arranged for Newt Smith, a nephew of defendant, to sell Simpson his car for $50; and that Simpson laid the $50 on the table and got in the car and left the country. There is a dispute among the state's witnesses as to who received this money, one of the witnesses saying it went to the defendant, while others said it went to Newt Smith's mother; that the officers were watching the Wallis home; and that defendant had promised to advise them if Simpson appeared, but failed to do so.

One witness testified that at the time the money was divided by Simpson, he said that he was setting aside $200 for defendant's husband for the use of the car. Another witness testified that defendant told him to leave the country and not plead guilty or he would get them all in trouble. Both of these witnesses were accomplices of Simpson, one driving the car when the robbery was effected and the other driving the car that took Simpson out of the country.

The defendant, testifying in her own behalf, denied that she knew anything about the robbery or received any

part of the proceeds of the same, or that Simpson ever came back to their home after the robbery. Defendant was corroborated as to the material facts in her defense by other witnesses who were disinterested.

Defendant contends first that the evidence is insufficient to support the verdict of the jury.

The only evidence that tends in any wise to connect the defendant with Simpson and the robbery after the robbery was committed was given by those who actually participated in the robbery and their relatives. Those witnesses testified to nothing that in any wise connected the defendant with the actual robbery of the bank, or with any knowledge that the bank was to .be robbed. The only evidence tending to show guilty knowledge of the defendant before the robbery were the circumstances set out in this opinion.

The Attorney General in his brief says:

"The only question really involved in the case is whether or not the defendant herein, Minnie Wallis, was concerned in the robbery of this bank in such a way that under the law she would be guilty in the commission of the crime."

The only theory upon which a conviction could be sustained would be that the defendant was an accomplice of Simpson and Rickard.

In Johnson v. State, 24 Okla. Cr. 326, 218 Pac. 179, in the body of the opinion at page 332, of 24 Okla. Cr., 218 Pac. 179, 181, this court said:

"It is always necessary, in proving a case against a defendant charged as being an accomplice, to show the culpability of the principal. There can be no accomplice, until it has been shown that the principal committed the offense, and that the accomplice previously advised and

abetted, or furnished the means by which the crime was committed by the principal."

Knowledge that a crime has been committed and concealment of such knowledge does not make one an accomplice, unless he aided or participated in the offense. State v. Dalton, 65 Wash. 663, 118 Pac. 829; In re Bowman, 38 Nev. 484, 151 Pac. 517; People v. Seiffert, 81 Cal. App. 195, 253 Pac. 189.

There is nothing in the record to show that the defendant had anything to do with furnishing the car or quilts, tarpaulin, or gun, or had any knowledge whatever that the robbery was to be committed. The fact that the robbers used her husband's car and gun and other property would be a circumstance tending to show that she had no knowledge of it, nor had anything to do with the robbery before it was committed. The fact that Simpson and Rickard had previously lived in the home of the defendant and her husband, and the fact that Simpson returned to this home after the robbery, are not inconsistent with her innocence. The facts that she kissed Simpson and aided him in escaping might indicate that he was her sweetheart and are what she would naturally do for him, when he was in trouble, but are not inconsistent with her innocence and do not tend to establish that she had any knowledge of or participated in the robbery of the bank.

This court has uniformly held that where a conviction is sought upon circumstantial evidence, all the circumstances proved must be consistent with each other and with the hypothesis that the defendant is guilty, and at the same time inconsistent with any other hypothesis. Nash v. State, 8 Okla. Cr. 1, 126 Pac. 260; De Bose v. State, 18 Okla. Cr. 554, 197 Pac. 176.

The facts and circumstances proved must not only be consistent with and point to the guilt of defendant, but they must be inconsistent with his innocence. Sies v. State, 6 Okla. Cr. 142, 117 Pac. 504; Davis v. State, 18 Okla. Cr. 112, 193 Pac. 745; Key v. State, 22 Okla. Cr. 284, 210 Pac. 1044; Hamilton v. State, 25 Okla. Cr. 233, 219 Pac. 951; Halsey v. State, 42 Okla. Cr. 221, 275 Pac. 405; Zeligson v. State, 43 Okla. Cr. 24, 276 Pac. 791.

Where the evidence is wholly circumstantial and the facts and circumstances in evidence are of such character as to permit an inference consistent with innocence, it cannot be regarded as evidence sufficient to support a conviction. Brown v. State, 12 Okla. Cr. 343, 156 Pac. 1150.

This court is reluctant to reverse a case of this character, but where the evidence offered by the state is circumstantial and where the circumstances are as consistent with the innocence of the defendant as they are with her guilt, it is the duty of this court to reverse the case on the ground that the evidence is insufficient to support the verdict of the jury.

The evidence being insufficient to support the verdict of the jury, the cause is reversed.

EDWARDS, P. J., and DAVENPORT, J., concur.