**Lonnie R. EDMONDSON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–33.**

Court of Criminal Appeals of Oklahoma.

Nov. 6, 1973.

R. Forney Sandlin, Muskogee, for appellant.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Lonnie R. Edmondson, hereinafter referred to as defendant, and defendant Hamm, were charged, tried, and convicted in the District Court, Muskogee County, Case No. CRF–72–239, for the offense of Murder; his punishment was fixed at life imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Bob Curtsinger testified that he was the operator of a retail gas station at 2320 Shawnee By-Pass and South Main in Muskogee; that on the evening of August 23, 1972, Billy Joe Summers was on duty at the station. He testified that the station was robbed and that $259.59 and a white bank bag marked "Curt's Oil Company" were missing.

Bill Westbrook testified that he was the manager of the service station on August 23, 1972; that Billy Summers was killed and that approximately $259 and the bank bag were missing.

Dr. Harvey Randall, the area State Medical Examiner, testified that he examined the body of Billy Joe Summers on August 23, 1972; that in his opinion Summers died from a gunshot wound in the left chest. He identified State's Exhibit 1 as the bullet removed from Summers' body. He testified that Summers had an one-inch abrasion on his right forehead and another laceration above the left eyebrow.

Shirley Ann Johnson testified that she was previoulsy married to defendant Hamm and that they were divorced in April, 1972. The trial court, thereupon, conducted an evidentiary hearing, outside the presence of the jury, to determine the admissibility of the witness' testimony. Defendant Hamm and other witnesses testified that defendant Hamm continued to live with Shirley as husband and wife after the divorce. Shirley testified that defendant Hamm continued to live with her after the divorce, against her will, by using force and that she did not consider herself married to defendant Hamm. The trial court thereupon ruled that a common law marriage did not exist and permitted the witness to testify.

She testified that on the evening of August 22nd at approximately 6:30 p. m., she and both defendants went fishing at a private pond. They were in her car, which was a gold and brown 1972 Grand Torino. They returned to town at approximately 8:30 p. m., purchased some wine and discussed fishing elsewhere. Both defendants decided that it was too late and they picked up her babysitter and returned home. Defendant Hamm helped her take the children inside and said that he was going somewhere and would be right back. Defendant Edmondson and defendant Hamm left in her car. Shortly after they left she discovered a .22 caliber pistol and a .38 caliber pistol were missing from a drawer where defendant Hamm had placed them. The .38 caliber pistol had only one bullet in it the last time she saw it. She heard some sirens and both defendants returned approximately thirty minutes later. They came in the house and defendant Edmondson emptied a white money bag on the bed and started counting some money. The white bag had "Curt's Oil Company" written on it. Defendant Edmondson said: "We had to shoot that peckerwood." (Tr. 279) Defendant Hamm told defendant Edmondson not to tell her about it. The following day, defendant Hamm told her: "I didn't think the dude was going to make it because Lonnie kept hitting him up side the head with the .38 and he said that while Lonnie was hitting the man that the bullet fell out of the gun, that .38 bullet." (Tr. 281) Defendant Hamm said that the man was trying to get a knife and that during the scuffle, the gun went off. She testified that she was under a suspended sentence for Disposing of Mortgaged Property. She further admitted making a false statement to the District Attorney's office involving other persons on September 1st. She testified that defendant Hamm forced her to make these statements.

Jerry Fraizer, store manager for a discount house, testified that his records reflected that one Robert Hamm purchased a box of .22 caliber long rifle shells on August 10, 1972.

Glen Boulet testified that he loaned State's Exhibit 5, the .22 caliber pistol, to defendant Hamm around August 9th and got it back from defendant Hamm around the last part of August.

Detective Louis Bradley testified that he arrived at the service station at approximately 12:20 a. m. He found Billy Summers lying in the door with a gunshot wound on the left side of his body. Summers said that two Negro males, about five-nine to five-ten, came around from the west with stockings over their heads and shot him. He found a shell lying on the floor near Summers' body. Shortly thereafter he arrested Shirley Johnson for a parole violation. Defendant Hamm confronted him saying that if he would let Shirley out of jail, that Hamm would find out who committed the crime. Several days later, defendant Hamm made a statement involving one Johnny Horton and a man named Alexander as being the robbers.

Officer Clyde Yarbrough testified that on the evening of August 22nd he was checking a building near the service station when he observed a yellowish gold car with a dark top, proceeding west on the Shawnee By-Pass at a high rate of speed. Shortly thereafter he found Billy Joe Summers lying in the driveway.

Detective Clois Huggins testified that on the morning of August 23rd he was investigating the scene when he observed a 1972 Ford Torino travelling slowly on the Shawnee By-Pass. He recognized the driver of the vehicle as being defendant Hamm.

For the defense, defendant testified that he had previously been convicted of Grand Larceny and "fighting charges"; that on August 22nd, he, defendant Hamm and Shirley Johnson went fishing at approximately 7:30 p. m. They returned to defendant Hamm's house at approximately 10:30 p. m. and drank a few beers. He left around 11:00 p. m. and went home. He did not leave his house again. He testified that he did not know anything about the robbery other than what he read in the paper.

Anna Mae Edmondson, defendant's mother, testified that on August 22nd defendant went fishing and came home around 11:00 p. m. Defendant Edmondson did not leave the house again that evening.

Thomas Washington, defendant Edmondson's cousin, testified that on the evening of August 22nd he was at his aunt's house watching television. Defendant Edmondson came to the house between 10:45 and 11:00 p. m. and was still there when he left at midnight.

 Defendant asserts several propositions of error, only two of which we deem necessary to discuss. The first proposition asserts that the testimony of Shirley Johnson Hamm, an accomplice, was not corroborated as required by 22 O.S.1971, § 742. We disagree. The evidence showed that Shirley Johnson was an accessory, not an accomplice. There is no evidence in the record to reflect that Shirley Johnson participated in the planning or the commission of the crime, nor did she procure the commission. She had no knowledge of the crime until after the crime was completed. The following day she assisted defendant Hamm in disposing of the money bag and several days later did make a false statement to the District Attorney's office. In Wallis v. State, 49 Okl.Cr. 58, 292 P. 1056, we stated in the second paragraph of the Syllabus:

"Knowledge that a crime has been committed and concealment of such knowledge do not make one an accomplice, unless he aided or abetted or participated in the offense."

In Vann v. State, 21 Okl.Cr. 298, 207 P. 102, we stated:

"All persons who, after the commission of the felony, conceal or aid the offender, are accessories. From this it will be

seen that an accessory after the fact, the only kind known under our law, is not an accomplice nor a coconspirator."

The third proposition contends that the trial court erred in refusing to grant a severance. This proposition is well taken. The record reflects that the defendant Edmondson timely filed a Motion for Severance, arguing that incriminating statements made by defendant Hamm to Shirley Johnson outside the presence of defendant Edmondson, were inadmissible as to defendant and that it would be impossible for defendant Edmondson to receive a fair trial if he were forced to be tried jointly with defendant Hamm. In the recent case of Monroe and West v. State, Okl.Cr., 512 P. 2d 214, we stated:

"The final proposition asserts that accusatory hearsay was admitted against defendant Monroe. This proposition is well taken. Prior to the trial a motion for severance was requested and denied by the trial court. In dealing with a similar proposition in the recent case of Clark v. State, Okl.Cr., 509 P.2d 1398 we stated:

'However, as to defendant Hubbard, who gave no statement to the police officer, we believe it was error for the trial court to admit in evidence the co-defendants confessions. In the case of Fugett v. State, Okl.Cr., 461 P.2d 1002 (1969) this Court held in Syllabus 1:

"In a trial where several defendants are jointly prosecuted, it is error to admit the confession of one of the co-defendants, made outside the presence of the others, implicating them, and such error is not cured by the court's instruction that the confession should be considered only in determining the confessor's guilt and not considered as to the others."

'Also see Phillips v. State, Okl.Cr., 330 P.2d 209 (1958) and Bruton v. United States, supra, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

'The record reveals that the defense counsel for Hubbard upon finding out that the district attorney was going to introduce the confessions by the co-defendants moved for a mistrial and asked for a severance for his client. We believe this motion should have been sustained and the severance as to defendant Hubbard should have been granted.' "

The judgment and sentence is, therefore, reversed and remanded for a new trial.

BRETT, J., concurs.

BLISS, P. J., not participating.