**Lonnie R. EDMONDSON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–74–493.**

Court of Criminal Appeals of Oklahoma.

Feb. 18, 1975.

Rehearing Denied March 3, 1975.

James H. Payne, R. Forney Sandlin, Muskogee, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David K. Mc-Curdy, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Lonnie R. Edmondson, hereinafter referred to as defendant, was first tried jointly with one Robert Hamm on a charge of Murder in the District Court of Muskogee County. Both the defendant and Hamm were convicted upon a jury verdict and sentenced to life imprisonment in the state penitentiary. From said initial judgment and sentence the defendant perfected his appeal to this Court, the conviction being reversed and the cause remanded for a new trial. Edmondson v. State, Okl.Cr., 515 P.2d 1158. Defendant was again tried, convicted by a jury and punishment assessed at life imprisonment. From a judgment and sentence in conformance with the second verdict defendant has perfected his timely appeal.

Simply stated the evidence adduced at the second trial is as follows: Bob Curtsinger testified that on the evening of the 22nd day of August, 1972, one of his employees was shot and killed during an armed robbery of a gas station on the Shawnee By-pass in Muskogee. Approximately $252.00 and a white bank cash bag with "Curt's Oil Company" written on it were missing.

It was then stipulated that if Bill Westbrook was called to testify he would relate that he was the manager of the service station and that on or about the 23rd day of August, 1972, Billy Summers was killed and approximately $259.00 and a bank bag were missing when he checked the station.

It was further stipulated that if Dr. Harvey Randall was called to testify he would relate that he was the area State Medical Examiner and that he examined the body of Billy Summers on the 23rd of August. He would testify that in his opinion Billy Summers died from a gunshot wound in his chest and that State's Exhibit No. 1 was the bullet removed from Summers' body. Randall also found a one-inch abrasion on Summers' right forehead and another laceration above the left eyebrow.

Shirley Ann Johnson then testified that prior to the 22nd of August she, Robert Hamm and another party went to California, returning to Muskogee at approximately 5:00 p. m. on the 22nd. Shortly thereafter they saw the defendant and decided to go fishing in the witness's 1972 gold Ford Torino with a dark brown vinyl top. About 9:00 p. m. they went to the witness's home and dropped off the witness, Hamm getting out for a minute and defendant remaining in the car. Hamm and the defendant then left together in the witness's car. The witness then testified that about 11:30 she heard some sirens.

During an evidentiary hearing outside the presence of the jury, the witness testified that when she heard the sirens she went to a drawer and found that a .22 pistol and a .38 pistol she thought were there were missing. Hamm had had the guns with him in the witness's car on the trip to California and on the 22nd before arriving in Muskogee he had fired the .38 five times, leaving an unfired shell in the chamber. Hamm had told her he had put the guns in a drawer in her home when they got back.

The jury was then called back and Ms. Johnson continued to testify stating that Hamm had had the weapons on the 22nd on the way back from California. On cross-examination she stated that the last time she saw the guns they were in the glove compartment of her car.

Shirley Johnson further testified that Hamm and the defendant came back to her house between 11:30 and 12:00 and that the defendant emptied out some money on her bed from a white money bag which she believed had "Curt's Oil Company" written on it. At that time the defendant stated "we had to shoot the peckerwood." After the money was split up the defendant left. The guns were subsequently admitted into evidence over strenuous objections.

On cross-examination the witness testified that she had initially been charged as a defendant in the robbery and had made two sworn, but inconsistent, statements to

the district attorney, one stating that two other parties had committed the robbery and the other stating that Hamm and the defendant had committed same. After subsequent redirect and recross-examination, the State on re-redirect examination introduced the conflicting sworn statements into evidence over the objection of defense counsel.

Louis Bradley, a detective with the Muskogee Police Department, then testified that he arrived at the scene of the robbery at approximately 12:20 a. m. on the 23rd. He found Summers lying in the doorway, the victim of a gunshot wound. Bradley asked Summers what had happened and he stated that two black men with stockings over their heads had shot him. Bradley then identified State's Exhibit No. 6 as being a .38 shell that he found lying on the floor near the victim.

Officer Clyde Yarbrough then testified that on responding to a call to go to Curt's Service Station he observed a car pull out from between some buildings and proceed west on the Shawnee By-pass at a high rate of speed. The car had a yellowish-gold body with a dark top, but he did not pursue same as a man was reported injured at the service station.

Detective Clois Huggins then related that on the morning of the 23rd he was investigating the scene of the crime when he noticed a 1972 light brown Ford Torino with a dark brown vinyl top slow or nearly stop on the By-pass. He identified the vehicle as being owned by Shirley Johnson and identified the driver as Robert Hamm. As soon as Huggins noticed the car, it sped up and quickly left the scene. He could not identify the other occupant or occupants in the car. The State then rested.

Defendant took the stand in his own behalf testifying that he had previously been convicted of grand larceny and that on the 22nd he saw Hamm and Shirley Johnson at approximately 6:30 p. m. and they went fishing until 10:30. They then returned to Hamm's house, had a few beers and the

defendant went home where he remained until morning. He denied being near Curt's Service Station on the night in question. On cross-examination the defendant stated that he had seen Robert Hamm with the .22 caliber pistol, Exhibit 3, while they were fishing on the evening of the 22nd.

◼ Defendant's first proposition in error urges that the trial court committed reversible error in not sustaining defendant's motion to strike his case from the trial docket because of a newspaper article published the day before trial wherein defendant's previous murder trial was evidently described and it was stated that the defendant had been convicted along with one Robert Hamm of the murder of Billy Joe Summers. The complained of newspaper article is not made a part of the record. In arguing his contention defendant refers to the following statement made by a prospective juror as follows, to-wit:

"JUROR DUMONT: I would like to make it a statement that I did understand some two (2) weeks ago or so that this man is getting separate trial whether it was tried with another gentleman at the time. That's recently I would say."
"THE COURT: You read about two (2) weeks ago?"
"JUROR DUMONT: I think it's somewhere along in there, I wouldn't know for sure, but it doesn't make any difference."

The statement by Juror Dumont, although made in the presence of the other jurors, did not inform them that there had been a prior conviction and an appeal. Therefore, we find nothing prejudicial about the statement.

◼◼ With reference to the prejudicial publicity arising out of a newspaper article evidently published the day before the second trial, an examination of the transcript of the voir dire of the prospective jurors reflects that each juror stated that he would be fair and impartial, had no preconceived opinions about the case and had

read nothing about the case other than what had been in the papers shortly after the incident. Where a jury is thoroughly examined on voir dire by the trial court and counsel and all jurors state that they could base their verdict on the evidence alone and lay aside any preconceived notions that might have been formed from what they had read, heard or discussed, a denial of a motion for a continuance or a motion to strike the jury panel is not an abuse of discretion. Stidham v. State, Okl.Cr., 507 P.2d 1312.

■ The defendant next urges that the trial court erred in admitting both weapons and a .38 bullet into evidence, arguing that there was not sufficient evidence to justify a reasonable inference that they were or may have been used in the crime or that the defendant was in any way connected with them. We cannot agree. Shirley Johnson testified that the guns were last seen in the glove compartment of her car on the 22nd; that Hamm and the defendant left in her car not too long before the incident and that the .38 caliber pistol had one bullet in it the last time she saw it. Therefore, we cannot say that the trial court abused its discretion in admitting the guns and the bullet into evidence as circumstantial evidence of the crime committed.

■ Defendant's third proposition asserts that the testimony of Shirley Johnson, an accomplice, was not corroborated as required by statute. We do not agree. The evidence shows that Shirley Johnson was an accessory, not an accomplice. Therefore, her testimony need not be corroborated. See Edmondson v. State, Okl. Cr., 515 P.2d 1158 and the cases cited therein.

The defendant next contends that the trial court committed reversible error in admitting into evidence the conflicting sworn statements made by Shirley Johnson shortly after the incident for the reason that one statement, Exhibit 6, contained hearsay statements made by Robert Hamm implicating the defendant in the commission of the crime charged in violation of the principles of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, the rule against the admission of hearsay evidence and the constitutional right to confrontation. The record reflects that Ms. Johnson testified at trial as follows:

"Q: Now Shirley, tell the jury now what conversation took place at that time after Lonnie dumped the money there on the bed from this bag.

"A: Well, he just said, 'We had to shoot the peckerwood.'

"Q: Who said that?

"A: Lonnie.

"Q: What else was said?

"A: Nothing else because Robert, you know, just, 'No, don't tell her that.'

"Q: Lonnie said what?

"MR. PAYNE: Excuse me, Your Honor.

"THE COURT: What's your objection?

"MR. PAYNE: May I approach the Bench?

"MR. PAYNE: Come now the Defendant, Lonnie Edmondson, and moves for mistrial for the reason that the witness, Shirley Johnson, testified to what Robert Hamm told her.

"MR. CONRAD: In the presence of Edmondson.

"THE COURT: Let me get it back. Motion overruled, exceptions."

The complained of portion of Exhibit 6 is as follows:

"Q: When Lonnie—you say Lonnie told you they had shot a peckerwood?

"A: Yeah, he just—I said, 'Where you all been?' He says—I don't know if he said girl or called me by my name. He said, 'We shot a peckerwood,' and Robert said, 'Don't tell her that man.'

"Q: He didn't tell you who shot the peckerwood?

"A: No, he said 'we'.

"Q: Has Robert ever told you which one did the actual shooting?

"A: Yes, he did.

"Q: Who did he say did it?

"A: He did.

"Q: Robert said he done it himself?

"A: Once he told me Lonnie did it because I was definitely trying to find out if he did. I didn't want him to be the one to shoot the man. The gunshot wound kill the man?

"Q: Yes.

"A: He said first he said Dickie did it, then he said that night they came to pick him up he said he did."

It is obvious that Exhibit 6 contains a hearsay statement of Robert Hamm which tends to implicate the defendant, and then exculpate him from the actual shooting. However, after examining the record as a whole, it is our opinion that the error did not contribute to the defendant's conviction. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. The jury knew that Ms. Johnson had made contradictory sworn statements and still believed her, even though on cross-examination she admitted that she had originally been charged as a participant in the robbery. Exhibit 6 did not add to her credibility under those circumstances. We, therefore, find that there is no reasonable possibility that the evidence contributed to the defendant's conviction, and we further find that the independent proof of appellant's guilt was so overwhelming that the *Bruton* error was harmless. Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340. Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208.

For all the reasons set out above, it is our opinion that there was sufficient evidence to sustain the verdict of the jury. The defendant has been deprived of no substantial right, the issues were fairly presented to the jury, and defendant received a fair and impartial trial. The verdict and judgment appealed from is, accordingly, affirmed.

BRETT, P. J., and BUSSEY, J., concur.