James Joseph **BLOZY**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–76–596.

Court of Criminal Appeals of Oklahoma.

Nov. 29, 1976.

Richard A. Hoffman, Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Annis Kernan, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, James Joseph Blozy, hereinafter referred to as defendant, was charged in the District Court, Tulsa County, Case No. CRF–76–258, with the offense of Robbery With Firearms, in violation of 21 O.S.Supp.1973, § 801. He was tried by a jury, convicted and sentenced to serve a term of twenty (20) years in the custody of the State of Oklahoma Department of Corrections at McAlester, Oklahoma. From said judgment and sentence the defendant has perfected his timely appeal to this Court.

Briefly stated, the virtually uncontradicted facts of the case are as follows. On the 27th day of January, 1976, Woody Harrison, manager of the Quik-Trip Store No. 1, located on South Peoria in Tulsa County, was on duty at approximately 10:30 p.m. An employee, Frederick Charles Lewman, Jr., arrived at the store shortly after 10:30 p.m. to relieve Mr. Harrison. At approximately 10:50 p.m. the defendant walked into the store, placed a beer on the counter, and walked to another part of the store. Several customers came and left before the defendant again approached the counter, this time nervously holding a small .22 caliber revolver. He demanded money from Harrison and Lewman and warned them not to "do anything funny" as a rifle was aimed at them from across the street. After receiving the money, the defendant left the store.

The following morning the defendant was arrested and, after having been given his Miranda warnings, proceeded to make a statement to the police admitting the robbery. Mr. Lewman identified the defendant later that day in a line up. The defendant had no prior criminal record.

The defendant testified in his own behalf and essentially corroborated the testimony of the State's witnesses. He stated that he and a companion had been drinking most of the evening of the 27th of January, 1976. The defendant told his friend that he knew someone from whom he could borrow money. Defendant left his friend and promised to meet him later. The defendant denied that his friend had anything to do with the robbery. The gun in his possession at the time of the robbery was unloaded.

The defendant contends in his first assignment of error that the trial court erred by allowing the prosecutor to discuss the subject of parole and probation during his voir dire examination.

The questioning to which the defendant objects is as follows:

"MR. HOPPER: I believe you indicated to Judge Ricketts that you do not work with people who are on suspended sentences or on parole?

"PROSPECTIVE JUROR ROACH: I have always been with child welfare.

"MR. HOPPER: Do you come in contact with any of the other workers of your department that—

"MR. HOFFMAN: Your Honor, I'll make an objection to this line of questioning. I think that we're opening up a question of parole or suspended sentences here.

"BY THE COURT: I'll overrule it.

"MR. HOPPER: Do you come in contact with any of your fellow employees who have the responsibility of working with people who are on parole or suspended sentences?

"PROSPECTIVE JUROR ROACH: No, sir, I do not." (Tr. 21–22)

The defendant contends that this questioning taken together with a request from the jury during their deliberation as to the length of time the defendant would serve if sentenced for ten years, clearly shows prejudice aroused by the prosecutor's remarks. We do not agree.

This Court has held many times that counsel on voir dire examination should inquire into all matters within his knowledge which might effect the qualification of the jurors. Further, counsel is

penalized in that he cannot later raise the objection if he fails to question fully, and later finds that a juror is not impartial. See, *Greathouse v. State,* Okl.Cr., 503 P.2d 239 (1972).

█ In the case at bar, the trial court began the voir dire examination of the juror in question by asking:

"BY THE COURT: In the course of your work, do you have occasion to counsel with or become involved with persons that are released, let's say, on criminal charges or parole probation?" (Tr. 12)

The defendant did not object to this inquiry by the trial court. Later in the voir dire examination the prosecutor merely restated the question which the trial court had asked in a good faith attempt to discover the partiality of the prospective juror. The question was legitimate, and it was directed to one in an occupation in which he could come in contact with such persons on parole or probation. Furthermore, the prosecutor did not pursue such a line of questioning beyond this point in the voir dire examination. The defendant, in his brief, admitted that the subject of parole and probation was very much in the news. Due to the overwhelming evidence of guilt, and considering that the prosecutor recommended a 35 year sentence and the jury returned only a 20 year sentence, we cannot say that the defendant was prejudiced by the prosecutor's remarks. See, *Mack v. State,* Okl.Cr., 535 P.2d 308 (1975). Therefore, we find the defendant's first assignment of error to be without merit.

In his second assignment of error, the defendant contends that the trial court erred in not excusing the prospective juror, David M. Frazier, because Mr. Frazier knew the victim in this crime. The defendant argues that because of the trial court's decision he had to exercise one of his peremptory challenges to prevent Mr. Frazier from sitting on the jury, thus depriving the defendant of an equal number of peremptory challenges.

█ In response to these assertions the Court reminds the defendant that the question of competency of the jurors is addressed to the sound discretion of the trial court, and absent an abuse of discretion, the finding of the trial court will not be upset on review. See, *Greathouse v. State,* supra. We do not believe that the trial court abused its discretion, particularly when the juror indicated that knowing the witness would not prevent him from giving the defendant a fair and impartial trial. At pages 85 and 86 of the transcript of trial we find the following:

"(By the Court) . . . You're not in the frame of mind, are you, that you're going to just believe or not believe that witness' testimony no matter what occurs here; is that right?

"A. Yes.

"Q. You will be willing to listen to both sides?

"A. Yes.

"Q. You'll be able to listen to Mr. Hoffman's cross-examination before you make up your mind as to what, if any, of the testimony of the State's witnesses here that is under your independent knowledge is believable?

"A. Yes.

"Q. Okay. In other words, you are willing to treat him just like every other witness, scrutinize his testimony and not just believe it all or believe none of it just because of what you know outside the courtroom. You're willing to treat him as any other witness?

"A. Yes."

█ In *Smithey v. State,* Okl.Cr., 385 P.2d 920 (1963), we specifically held that just because the jury knew the prosecuting witness, it was not necessarily grounds for reversal absent a showing of prejudice. In the case at bar, the defendant failed to show that he was prejudiced by compelling

him to later accept a juror he considered unfit. As we held in *Sallee v. State,* Okl. Cr., 544 P.2d 902 (1975), the burden is upon the defendant to establish he was prejudiced in his substantial rights. In the instant case, the record is silent to the fact that the defendant was precluded from removing a prospective juror whom he considered to be undesirable. Therefore, the defendant's second proposition is without merit.

The defendant contends in his third assignment of error that the trial court erred in allowing written hearsay to be admitted into evidence and by allowing the prosecutor to question the defendant about a letter which he received while the defendant was incarcerated in the Tulsa County jail.

The pertinent portions of the cross-examination which involved the defendant's receipt of a letter from his friend, Rodney Richardson, is as follows:

"Q. What railroad?

"A. I don't know. I received a letter from him that said he was working for the railroad.

"Q. You did receive a letter from him?

"A. Yes, sir.

"Q. How long ago?

"A. Last night or night before last.

"A. Where is he located now?

"MR. HOFFMAN: Your Honor, I'll object to any further questions about this letter.

"A. North Platte, Nebraska.

"MR. HOFFMAN: It's hearsay.

"BY THE COURT: I'll overrule it.

"Q. Do you have his address?

"A. I've got it upstairs. He's staying with an uncle there.

"Q. Did he give you his uncle's name?

"A. Yes, sir." (Tr. 133)

The purpose for pursuing this line of questioning was to test the veracity of the defendant's statement that he had re-

cently received a letter from his friend. This questioning was pursued only to prove that the letter was actually received, and did not go to the truth of the matter contained in the letter. As stated in Syllabus No. 7 of *Williams v. State,* Okl.Cr., 542 P.2d 554 (1975), modified on other grounds, *Riggs v. Branch,* Okl.Cr., 554 P. 2d 823 (1976):

". . . The hearsay rule, however, does not operate, even apart from its exceptions, to render inadmissible every statement repeated by a witness as made by another person. It does not exclude evidence offered to prove the fact that a *statement was made or a conversation was had,* rather than the truth of what was said. Where the mere fact that a statement was made or a conversation was had is independently relevant, regardless of its truth or its falsity, such evidence is admissible as a verbal act. . . ."

Also, see, *Taylor v. State,* 61 Okl.Cr. 110, 65 P.2d 1233 (1937).

The testimony considering the letter which the defendant received had no bearing on the central question of the defendant's guilt or innocence. We cannot say in the face of independent, overwhelming evidence of guilt that the admission of such testimony contributed to the defendant's conviction. See, *Edmondson v. State,* Okl.Cr., 532 P.2d 81 (1975).

In his fourth assignment of error, the defendant contends that the trial court erred in allowing the prosecutor to allude to alleged conversations between the defendant and his counsel. The objectionable statements by the prosecutor in his closing argument concerned a portion of Officer Curtis Hanks' testimony which defense counsel elicited. The officer, when questioned by the defense counsel, stated that the defendant appeared to be straightforward in his answers to questions which were put to him. The prosecutor later, in his closing remarks, mistakenly remembered the testimony from Officer Hanks as testimony which came from the defendant.

■ It has long been held that during closing argument, the prosecutor has a right to discuss fully from his standpoint the inferences and deductions which may be reasonably drawn from the evidence presented at trial. See, *Ford v. State,* Okl.Cr., 532 P.2d 89 (1975).

■ The prosecutor was commenting on testimony which was entered into evidence, and it is of little consequence in this case that such testimony was mistakenly identified as that coming from the defendant, when in fact Officer Hanks testified that the defendant was straightforward in his answers to him.

The defendant next contends that the trial court erred by curtailing the closing argument of defense counsel when the court sustained an objection made by counsel for the State. In the record at pages 168 and 169 we find:

"[BY MR. HOFFMAN:] Mr. Hopper would have you believe, I think it's reasonable to assert and infer from his argument, that James Blozy and his friend were on a Reign of Terror, that they were drinking and shooting a path through the country between here and Salt Lake. It's just not true. We asked the—

"MR. HOPPER: Your Honor, I object to that. This man knows nothing about what happened between here and Salt Lake City.

"BY THE COURT: I'll sustain it.

"MR. HOFFMAN: We asked the professional about warrant, none. . . ."

■ This Court has often held that while the counsel for both sides are afforded a liberal range of discussion in their closing arguments, it is improper for counsel to inject matters not supported by the evidence. See, *Tucker v. State,* Okl. Cr., 499 P.2d 458 (1972). After a careful reading of the record we do not find any evidence which indicates the scope of defendant's activities before he arrived in Tulsa. Furthermore, we do not see how the defendant was prejudiced by the action of the trial court in sustaining the objection of the prosecutor. From the record it appears that the defendant was not interrupted in his train of thought by the prosecutor's objection as evidenced by his completion of the sentence that he was attempting to complete before the objection was raised. Therefore, this proposition is found to be without merit.

The defendant assigns as his sixth assignment of error that the trial court erred by overruling the defendant's objection to the instruction given by the trial court defining robbery by firearms. The defendant objected to the use of the terms "force and fear" by the trial court in defining robbery with firearms.

■ A reading of the statutes concerning robbery and robbery with firearms reveals that the trial court used language directly from those statutes in its instructions to the jury. We have held many times that an instruction is sufficient when given in the substantial language of the statutes. See, *Fish v. State,* Okl.Cr., 505 P.2d 490 (1973). Moreover, the defendant fails to show any prejudice which resulted from the inclusion of such terms in the instructions. In the light of overwhelming evidence we find no merit to this contention.

As his seventh assignment of error the defendant contends that the trial court erred in not allowing the prosecutor to take the witness stand on behalf of the defendant. The defendant alleges that the relationship between the prosecutor and the complaining witness should have been brought out on the stand to show the prosecutor's bias against the defendant. The defendant, however, failed to cite any authority to support his contention.

■ It is a well established rule that it is necessary for the defendant not only to assert error, but to support his contentions with citations of authority. See *Rider v. State,* Okl. Cr., 494 P.2d 347 (1972). In the case at bar, having found no deprivation of fundamental rights, this

Court will not search the books for authorities to support such mere assertions.

The defendant asserts in his eighth assignment of error that the prosecutor engaged in activities which were so prejudicial that they denied defendant his right to a fair and impartial trial. He argues that the prosecutor employed distortion, innuendo, and misstatement of the facts to prejudice the jury.

We are of the opinion that the allegations by the defendant as to the prejudicial behavior of the prosecutor are unwarranted by the facts. It is apparent that the remarks of the prosecutor fell within the liberal range of argument afforded counsel for both the State and the defendant. See, *Harvell v. State*, Okl.Cr., 395 P.2d 331 (1964). Clearly, the prosecutor's conduct cannot be considered flagrant and grossly improper. See, *Wimberli v. State*, Okl.Cr., 536 P.2d 945 (1975).

 Finally, the Court cannot say that the conduct of the prosecutor prejudiced the defendant. As stated in *Sizemore v. State*, Okl.Cr., 499 P.2d 486 (1972), where the guilt of the defendant is clear and there is no reason to believe that the jury could have arrived at any other verdict, this Court will not reverse a case because of improper conduct of the prosecuting attorney. In the case at bar, the guilt of the defendant was admitted and we cannot see how the remarks of the prosecutor could have affected the outcome of the trial. See, *Melot v. State*, Okl.Cr., 375 P.2d 343 (1962).

As his final assignment of error the defendant contends that the sentence imposed was excessive. In *Roberts v. State*, Okl. Cr., 473 P.2d 264 (1970), this Court stated in the second paragraph of the Syllabus:

"The question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case, and the Court of Criminal Appeals does not have the power to modify a sentence unless we can conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the court."

 In the instant case, the evidence was conclusive as to the defendant's guilt. The twenty (20) year sentence returned was far below the thirty-five (35) year sentence asked for by the prosecutor. The sentence is well within the statutory limits set, and we therefore refuse to modify it.

Under the authority set forth above, we are of the opinion that the judgment and sentence appealed from should be and the same is, hereby, *AFFIRMED*.

BUSSEY and BLISS, JJ., concur.