**Lonnie R. EDMONDSON, Petitioner,**

v.

**Norman B. HESS et al., Respondents.**

**No. 78–230–C.**

United States District Court,
E. D. Oklahoma.

Dec. 22, 1978.

Lonnie R. Edmondson, pro se.

Jerry Earl Benson, Asst. Atty. Gen., Oklahoma City, Okl., for respondents.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

This is a proceeding for a writ of habeas corpus by the above named petitioner who is presently incarcerated in the Oklahoma State Penitentiary at McAlester, Oklahoma. Petitioner claims that his detention, pursuant to the judgment and sentence of the District Court of Muskogee County, Oklahoma, in Case No. CRF–72–239, is unlawful. Petitioner was convicted after trial by jury of murder in the first degree and sentenced to life imprisonment.

Petitioner had first been convicted in a joint trial with his codefendant, Robert Hamm. That conviction was reversed in *Edmondson v. State*, 515 P.2d 1158 (Okl.Cr. 1973) and resulted in his trial in CRF–72–239. Direct appeal from the second conviction was had in *Edmondson v. State*, 532 P.2d 81 (Okl.Cr.1975), wherein the judgment was affirmed. Petitioner has also sought post-conviction relief in the Muskogee County District Court which was denied on December 14, 1976 after an evidentiary hearing. This order was appealed to the Oklahoma Court of Criminal Appeals (PC–77–616) which affirmed the decision of the District Court on September 8, 1977.

Petitioner proceeds herein pro se and in forma pauperis. While the asserted grounds for relief are not cogently presented, the court has liberally construed the petition and carefully examined the supporting facts given in regard to each ground. The court believes that the petition presents the following grounds in support of the relief sought:

I. The trial court (all references to the "trial court" shall be to the second trial whose conviction is challenged here, unless otherwise specified) improperly admitted the testimony of Shirley Johnson Hamm.

II. The trial court committed reversible error in admitting hearsay testimony into evidence.

III. The admission of Exhibits 5 and 6 by the trial court denied petitioner his right to confrontation and could have reasonably contributed to his conviction.

IV. The prosecution knowingly suborned false testimony from the witness Louis Bradley.

V. Petitioner was denied the right to confront and cross-examine Dr. Harvey Randall.

VI. Petitioner was denied his constitutional rights by the failure of the Muskogee District Court to appoint counsel in the appeal of that court's denial of petitioner's post-conviction application.

Respondent has filed a response contesting petitioner's right to issuance of the writ. Included with the response was the transcript and record of petitioner's trial together with records from all the appellate and post-conviction proceedings had herein. Also before the court are Exhibits 5 and 6 from petitioner's trial. Both petitioner and respondent agree that all state remedies have been exhausted. Each of petitioner's propositions will be considered separately.

*Proposition I. The Trial Court Improperly Admitted the Testimony of Shirley Johnson Hamm.*

In support of this proposition, petitioner contends that Shirley Johnson Hamm was in fact the common law wife of Robert Hamm with whom petitioner had first been tried and convicted. Petitioner would also show that Mrs. Hamm was convicted of perjury after testifying at the first trial. Otherwise, petitioner does not specify in what manner this witness' testimony was inadmissible.

Review of the record indicates that the complained of perjury occurred at petitioner's first trial when Mrs. Hamm testified that she only lived with petitioner's codefendant (Robert Hamm) because of fear and duress. Mrs. Hamm later admitted at the second trial that she freely consented to living with Robert Hamm. Thus, at the trial the propriety of which is now challenged, there was no perjury. Further, the only question which this conflicting testimony went to was whether a spousal privilege existed on behalf of Robert Hamm. At petitioner's second trial, petitioner was tried alone and no allegation was ever made that he was married to Mrs. Hamm. Even if some error was committed in the admission of Mrs. Hamm's testimony, such would only involve a matter of state law.

Petitioner's first proposition of error raises no violation of the Constitution or the laws or treaties of the United States. This court can only entertain an application for a writ of habeas corpus where such a violation is alleged. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Hopkins v. Anderson*, 507 F.2d 530 (10th Cir. 1974), *cert. denied*, 421 U.S. 920, 95 S.Ct. 1586, 43 L.Ed.2d 788 (1975). *See also* 28 U.S.C. § 2254.

*Proposition II. The Trial Court Committed Reversible Error in Admitting Hearsay Testimony into Evidence.*

In this proposition petitioner challenges the propriety of the trial court's admission of certain evidence. Specifically petitioner complains of two separate matters: one, the testimony of Shirley Johnson Hamm on direct, and two, Exhibits 5 and 6. Petitioner's complaint here regarding the exhibits is the same issue raised in Proposition III and shall be treated there. The alleged defect in the proceedings regarding Shirley Johnson Hamm's testimony occurred as follows:

Q. Now Shirley, tell the jury now what conversation took place at that time after Lonnie [Edmondson] dumped the money there on the bed from this bag.

A. Well, he just said, "We had to shoot that peckerwood."

Q. Who said that?

A. Lonnie.

Q. What else was said?

A. Nothing else because Robert, you know, just, "No, don't tell her that."

Q. Lonnie said what?

MR. PAYNE: Excuse me, Your Honor.

THE COURT: What's your objection?

MR. PAYNE: May I approach the Bench?

(Whereupon, the following conference was had at the bench:)

MR. PAYNE: Comes now the Defendant, Lonnie Edmondson, and moves for mistrial for the reason that the witness, Shirley Johnson, testified to what Robert Hamm told her.

MR. CONRAD: In the presence of Edmondson.

THE COURT: Let me get it back. Motion overruled, exceptions.

■ Petitioner's assignment of error in the trial court relates to the admission into evidence of the testimony of Shirley Johnson Hamm as to what was told her by Robert Hamm. Petitioner's contention that this was error overlooks the fact that Robert Hamm's declaration was made in the petitioner's presence. And this is not a case where petitioner merely remained silent. On the contrary, he joined in the conversation. If indeed Robert Hamm's declaration be deemed as hearsay, such comes within a well recognized exception to the rule and was clearly admissible. *See United States v. Adams,* 470 F.2d 249 (10th Cir. 1972); *United States v. Steel,* 458 F.2d 1164 (10th Cir. 1972); and *Martinez v. United States,* 295 F.2d 426 (10th Cir. 1961). In *United States v. Adams, supra,* 470 F.2d at 251, the following appears:

A declaration of one defendant made in the presence of another defendant, under circumstances warranting an inference that the other defendant would naturally have contradicted it if he did not assent, is admissible. . . . The theory is that it is an admission against interest of the silent party and therefore within an exception to the hearsay rule.

Under the foregoing law the testimony here complained of was clearly admissible.

*Proposition III. The Admission of Exhibits 5 and 6 by the Trial Court Denied Petitioner his Right to Confrontation and Could have Reasonably Contributed to his Conviction.*

In support of this proposition petitioner would show to the court that Exhibits 5 and 6 were admitted into evidence and given to the jury. These exhibits were statements given by Shirley Johnson Hamm to the District Attorney during his investigation of the crime petitioner stands convicted of. Petitioner also claims that these exhibits contain hearsay statements of Robert Hamm who was not available for cross-examination. Careful review of the exhibits shows that the only statements which petitioner complains of are in Exhibit 6 and consist of the following:

Q. When Lonnie [Edmondson]—you say Lonnie told you they had shot a peckerwood?

A. Yeah, he just—I said, "Where you all been?" He says—I don't know if he said girl or called me by my name. He said, "We shot a peckerwood," and Robert said, "Don't tell her that man."

Q. He didn't tell you who shot the peckerwood?

A. No, he said "we."

Q. Has Robert [Hamm] ever told you which one did the actual shooting?

A. Yes, he did.

Q. Who did he say did it?

A. He did.

Q. Robert said he done it himself?

A. Once he told me Lonnie did it because I was definitely trying to find out if he did. I didn't want him to be the one to shoot the man. The gunshot wound kill the man?

Q. Yes.

A. He said first he said Dickie did it, then he said that night they came to pick him up he said he did.

Q. He told you that?

A. He said he knew you all had him.

Petitioner complains that the admission of these exhibits denied him the right to confront their source, Robert Hamm, and that they could have reasonably contributed to petitioner's conviction. The opinion of the Oklahoma Court of Criminal Appeals on direct appeal of this matter, *Edmondson v. State,* 532 P.2d 81, 85 (Okl.Cr.1975), appears to admit (perhaps only *arguendo* ) that petitioner was denied his right to confrontation but held that such could not have contributed to petitioner's conviction. This court shall assume for the moment that petitioner's right to confrontation was violated.

In *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967) the Supreme Court said:

We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.

In determining whether such errors require reversal the standard to be utilized is:

[W]hether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.

*Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963).

The Oklahoma Court of Criminal Appeals in *Edmondson, supra,* found that the hearsay statement of Robert Hamm did not and could not have contributed to petitioner's conviction for the reason that it served to exculpate petitioner to at least as great a degree as it implicated him in the actual shooting. That court also found that the independent proof of petitioner's guilt was so overwhelming that any error in this regard was harmless. *See Milton v. Wainwright,* 407 U.S. 371, 377, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Schneble v. Florida,* 405 U.S. 427, 431, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). In the view which this court takes of the proposition, the decision of the Court of Criminal Appeals was correct.

■ The crime with which petitioner was charged grew out of the late night robbery of a gas station in which the attendant was shot and killed. The complained of statement by Robert Hamm only goes to the question of who actually shot the attendant. Under the instructions of the trial court, which are not now nor have ever been challenged, the jury was not presented with the question of who did the actual shooting. The jury merely had to find that petitioner was engaged in the commission of a felony which resulted in death. Instruction No. 9 (Tr. 214). Once such a finding was made, the question of which participant actually "pulled the trigger" could not have affected the verdict which was to be returned by the jury. The court also notes that immediately preceding the hearsay statements of Robert Hamm was Mrs. Hamm's statement

that petitioner admitted, "We shot a peckerwood." This same statement was given in direct testimony by Mrs. Hamm (Tr. 143). Thus there is no reasonable possibility that the statement by Robert Hamm could have contributed to the verdict of the jury.

*Proposition IV. The Prosecution Knowingly Suborned False Testimony from the Witness Louis Bradley.*

In support of this proposition, petitioner would show the court that police officer Louis Bradley testified as follows at the preliminary hearing:

Q. Did he give any description?

A. No, this is all he said. There was a lot of confusion out there, but this is all the man stated, that they were negro males with stockings over their face, walked around this side, he pointed toward the west of the building and robbed him. I said: "Well what did they shoot you for?" just like that. He said: "I don't know." I said "Well, how tall were they"? He said: "about five eight (5'8")," and some lady was there trying to help him and he passed out. I did not have no more conversation. When I got to the hospital he had died

and as follows during petitioner's trial:

Q. Did he say anything else to you at anytime that evening or any other time?

A. I can't remember nothing else that he said other than—we went out to the hospital and he had stated again that it was two (2) black males, 5'10" and 5'9".

Q. I see, and were you able to take any more statements or get any more information from him after that?

A. No, he passed away.

Review of the record indicates that immediately preceding the above quoted testimony at trial, the officer had stated:

Q. Were you able to determine whether anyone had seen the shooting incident, anyone who was there that night?

A. No one but the victim. He was trying to tell me.

Q. Was he alive when you got there?

A. Yes, he was able to talk to me.

Q. And what did he tell you?

A. He told me that two (2) black males or two (2) black man or boys, I don't remember. He said two (2) black males had robbed him, had stockings over their faces. They were about 5′9″ or 5′10″ and they had run back west from the service station.

Q. Did he tell you anything else?

A. And that they were the ones that shot him.

Q. Was he able or did he ever tell you anything there?

A. Well, then he went into unconsciousness. He was just passed out.

Q. Did he say anything else to you at anytime that evening or any other time?

A. I can't remember nothing else that he said other than—we went out to the hospital and he had stated again that it was two (2) black males, 5′10″ and 5′9″.

Q. I see, and were you able to take any more statements or get any more information from him after that?

A. No, he passed away.

The record also indicates that at trial the officer had his notes available (Tr. 171) and that petitioner waived his right to cross-examination (Tr. 174).

█ As the court views the testimony, there is no significant difference between the two versions. The minor variations (at best, one or two inches in height and whether the victim had a chance to repeat some of the details before death) are the type which would inevitably appear in unrehearsed testimony given at two different times. Such minor differences do not even approach supporting petitioner's bald assertion of the knowing use of perjury by the prosecution. The court's view is fortified by the waiver of cross-examination by counsel shown throughout the transcript to have vigorously asserted petitioner's case.

*Proposition V. Petitioner was Denied his Right to Confront and Cross-Examine Dr. Harvey Randall.*

In support of this proposition, petitioner would show the court that during his trial a stipulation was entered into in open court by the prosecution and petitioner's counsel (with petitioner present). The stipulation regarded the testimony of Dr. Harvey Randall and was as follows:

The next witness would be Dr. Harvey Randall, which the State would call and we will stipulate with the Defendant that Dr. Harvey Randall if he were here would testify as follows: That Dr. Harvey Randall was the area State Medical Examiner for this area, and that he in this capacity as State Area Medical Examiner, he examined the body of Billy Joe Summers on August the 23rd, 1972. He would further testify that in his opinion Billy Joe Summers died from a gunshot wound in the left chest, that he would further testify and identify the State's Exhibit No. 1 that has been marked State's Exhibit No. 1, as the bullet removed from Billy Joe Summers' body when he examined him on August 23, 1972. Doctor Randall would further testify for you that Summers had one (1) inch abrasion on his right forehead and another laceration above the left eyebrow when he examined him on August the 23rd, 1972.

At this time, Your Honor based on the stipulation we offer into evidence State's Exhibit No. 1.

THE COURT: Any objection?

MR. SANDLIN: May I look at it a moment please. No objection.

THE COURT: State's Exhibit No. 1 will be admitted into evidence without objection. Mr. Kelly, pass it to the jury.

█ Petitioner now asserts that the above stipulation deprives him of the right to confront Dr. Randall and additionally deprived the trial court of jurisdiction under Oklahoma law (citing Okla.Stat. tit. 21, § 693). Based upon the authority cited

previously, this court will not review the question of state law.

 Petitioner's fifth proposition appears totally devoid of merit. It is unquestioned that the right to confrontation may be waived and that by stipulating to the admission of certain evidence the defendant waives his right to confront the source of that evidence. *United States v. Carlson,* 547 F.2d 1346 (8th Cir. 1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977); *United States v. Martin,* 489 F.2d 674 (9th Cir. 1973), *cert. denied,* 417 U.S. 948, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974). As a matter of trial tactics, it is sometimes best not to dispute the indisputable. Here the fact that a death had occurred, the cause of that death and the condition of the body were never contested. Petitioner probably thought it to his advantage to obscure the "grisly details" of death as much as possible. Whatever the reason, petitioner having chosen to waive his right to confrontation at trial, he cannot now complain of his failure to exercise it.

> *Proposition VI. The Muskogee District Court Erred in not Appointing Counsel to Handle Petitioner's Appeal from that Court's Denial of Post-Conviction Relief.*

This proposition raises the question of whether the State need appoint counsel for an indigent who wishes to appeal from the trial court's denial of post-conviction relief. Petitioner contends that immediately after being informed of the District Court's decision denying his application for post-conviction relief, he requested the trial court to appoint counsel to prosecute the appeal therefrom. No counsel was appointed. The Oklahoma Court of Criminal Appeals reviewed the decision, adopted the order of the District Court and affirmed it unanimously.

 Petitioner has cited no authority for his contention that he is entitled to appointed counsel under these circumstances. Indeed the law appears to be to the contrary. In *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the Court specifically chose to limit its decision requiring court appointed appellate counsel for indigents to the initial level of appellate review. In the subsequent case of *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), the Court refused to extend the requirements of *Douglas* to subsequent discretionary levels of appellate review. The Court in *Ross* held a defendant was not constitutionally entitled to court appointed counsel at every level of appellate review.

> [T]he fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required.

*Id.* at 616, 94 S.Ct. at 2447. There was no error in the state court's refusal to appoint counsel for the appeal of petitioner's post-conviction application.

*Conclusion*

No basis for issuing the writ having been shown, the petition for writ of habeas corpus should be denied.

It is so ordered this 22nd day of December, 1978.